IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| The Inclusive Communities Project, Inc., | § § | |
| Plaintiff, | § § | Civil Action No. |
| v. | § § | |
| The Town of Flower Mound, Texas, | § § | |
| Defendant. | § § | |

## COMPLAINT

**Introduction**

1. The Town of Flower Mound is the beneficiary of millions of dollars in federal funds and loan guarantees provided under the New Communities program during the 1970s. The specific goals of the New Communities program included racial integration through the inclusion of low and moderate income rental housing in the Town's housing inventory. Even though the Town participated in the program and took the federal assistance, it has rejected the goal of racial integration through the creation of low and moderate income rental housing. The Town has instead chosen to exclude low and moderate income rental housing and establish a predominantly White Town and predominantly White and segregated public schools for the residents of the Town.[1]

2. The Inclusive Communities Project, Inc. ("ICP") offered to assist the Town with an

---

[1] By "White", this complaint means persons of the U.S. Census defined White race which persons are not also persons of Hispanic or Latino ethnicity. By "Black" this complaint means persons of the U.S. Census defined Black or African American race which persons are not also persons of Hispanic or Latino ethnicity.

ICP program designed to provide the Town with financial assistance that could be used to attract high quality Low Income Housing Tax Credit rental housing. This housing would have provided low and moderate income rental housing and increased racial integration in the Town. The Town refused to even negotiate about its participation in the ICP program or in an alternative program that would have accomplished the same result. In addition, ICP sought multifamily zoned land in Flower Mound for use in developing low and moderate income rental housing. There was no multifamily zoned vacant land available for purchase and use in Flower Mound. There are less than two acres of vacant multifamily zoned land potentially available for development in Flower Mound. The Town refused to negotiate on the locations where it would grant multifamily zoning for affordable low income rental housing purposes.

**Jurisdiction**

3. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. § 3613(a).

**Plaintiff**

4. The plaintiff Inclusive Communities Project ("ICP") is a fair housing focused nonprofit organization which works with families seeking to use Dallas Housing Authority ("DHA") Section 8 voucher programs to obtain and retain housing in predominately non-minority areas of the Dallas metropolitan area.

5. ICP's clients include the families participating in DHA's Walker Section 8 Settlement Voucher program. All of these families are Black. The Walker Section 8 Settlement Voucher program is part of a remedy for racial segregation in the DHA public housing and Section 8 programs. Under the Settlement Voucher program higher rents and other financial and counseling assistance are made available for the participants seeking to use Walker Section 8

Settlement Vouchers in non-minority and non-poverty concentrated census tracts in the Dallas area. ICP also assists families participating in DHA's Section 8 Housing Choice Voucher program who want to find housing in non-minority and non-poverty concentrated census tracts in the Dallas area. The families participating in DHA's Section 8 Housing Choice Voucher program are predominantly Black. ICP's work with the Settlement Voucher families and the Housing Choice Voucher families is part of ICP's mission to break down barriers to the creation of racially and economically inclusive communities. ICP assists both DHA Settlement Voucher families and Housing Choice Voucher families who choose to lease dwelling units in non-minority areas with counseling and financial assistance.

5. ICP's office is located in the City of Dallas, Dallas County, Texas.

**Defendant**

6. Flower Mound is a home rule municipal corporation located in Denton County, Texas.

**Facts**

**There are no affordable low income housing programs operated by Flower Mound and few units affordable for low income households.**

7. The Section 8 program is the federal government's major program for assisting very low-income families to find and pay for decent, safe, and sanitary housing in the private housing market. 42 U.S.C. § 1437f(o). The Section 8 families pay at least 30% of their income for the gross rent for a unit. Gross rent includes both the contract rent and the cost of the utilities for the unit. The Section 8 subsidy for the portion of the rent not paid by the Section 8 family is paid directly to the landlord. The United States Department of Housing and Urban Development ("HUD") is the federal agency responsible for administering the Section 8 program.

8. The DHA Settlement Voucher program is a federal court ordered enhancement of the

Section 8 program as part of the remedy for racial segregation in the DHA public housing and Section 8 programs. The DHA Settlement Voucher program is part of the public housing desegregation remedy ordered in *Walker v. U.S. Dept. of Housing and Urban Development, et. al.*, 03:85-cv-1210 (N.D. Tex.).

9. Public housing is a federal low income housing program that uses dwelling units owned by a local housing authority such as the McKinney Housing Authority. The federal government provides a subsidy that allows the tenants to pay no more than 30% of their income for rent. HUD is the federal agency responsible for administering the public housing program. 42 U.S.C. § 1437c.

10. The Low Income Housing Tax Credit Program is a federal housing program based on the provision of income tax credits for developers and investors in low income multifamily rental housing. 26 U.S.C. § 42. The targeted beneficiaries of the program are very low and extremely low income households. The program's purpose is to encourage the development and preservation of rental housing for low income families, maximize the number of units added to the state's housing supply, and prevent losses in the state's supply of affordable housing. The Texas Department of Housing and Community Affairs ("TDHCA") is the state agency with the authority to allocate tax credits under this program. The program has produced many units. The TDHCA's 2008 Property Inventory Report lists 1,691 Low Income Housing Tax Credit projects with 194,532 units in the State of Texas.

11. The Low Income Housing Tax Credit program is disproportionately minority occupied when compared to the general housing market. According to TDHCA's 2007 Housing Sponsor Report, the State's Low Income Housing Tax Credit units are 34.8% Black and 33.4%

Hispanic or Latino occupied. The State's occupied housing units are 11.5% Black and 28.6% Hispanic or Latino.

12. There is no public housing in Flower Mound. Even though the Town has the legal authority to activate the Housing Authority of the Town of Flower Mound, it has never chosen to do so. Public housing residents in the Dallas Primary Metropolitan Statistical Area are approximately 78% Black.

13. There are no Low Income Housing Tax Credit units in Flower Mound. Low Income Housing Tax Credit unit residents in the Collin, Dallas, and Denton county area are 47% Black and 27% Hispanic according to the Texas Department of Housing and Community Affairs reports. The Low Income Housing Tax Credit projects cannot refuse to rent to Section 8 tenants because the tenants are on the Section 8 voucher program. 26 U.S.C. §42(h)(6)(B)(iv); Texas Government Code 2306.269(b). The development of such tax credit units in Flower Mound would make units available for ICP's clients and other Section 8 participants in the Town. The Town has not established its own program to encourage the development of Low Income Housing Tax Credit units and it has refused to participate in the ICP program to encourage Low Income Housing Tax Credit developers to provide low income rental housing in the Town.

14. There is no Section 8 Voucher program operated by the Town or by any Town agency.

15. There are only three apartment complexes with a total of 822 units in the Town. All of the other housing units in Flower Mound are single family dwelling units. These apartment units were built prior to 2000 and no apartments have been built since. None of the three apartment complexes in Flower Mound will lease to participants in the DHA Settlement Voucher

program or the DHA Section 8 voucher program.

16. The Town's policies and practices - including its comprehensive zoning plan, its zoning ordinance and zoning map, and its Smart Growth ordinance and procedures - have limited the number of apartments in the Town to only 4% of all housing units in the Town. The population that uses apartments in the Dallas area is disproportionately non-White compared to the population in single family dwelling units. Multifamily units in the Dallas-Plano-Irving, TX Metro Division; Dallas-Fort Worth-Arlington, TX Metro Area ("Dallas Metro Division") were 24% Black occupied and 27.3% Hispanic occupied as of 2006. Single family detached housing units in the Dallas Metro Division are less Black or Hispanic occupied. Single family detached housing units in the Dallas Metro Division were 12% Black occupied and 18% Hispanic occupied as of 2006. A disproportionate percent of Black households in the Dallas Metro Division use multifamily units for their dwellings compared to the percent of White households using multifamily units. 46% of Black households live in multifamily units while 22% of White households live in multifamily units. The Town's limitation of the number of apartments makes unavailable additional units of a type of housing that is disproportionately used by non-White households.

17. As of 2000, there were only 99 affordable low income occupied housing units in the Town of Flower Mound. These affordable low income housing units were only 0.61% of the 16,305 occupied housing units in the Town of Flower Mound.

18. Flower Mound is part of the Dallas Metro Division. The 2006 population of the Dallas Metro Division area was 15% Black, 28.3% Hispanic or Latino, and 49.9% White. The poverty population was 13.2% of the total population. The median household income was

$52,070.

19. Flower Mound had a 2006 population of 67,000. That population was 2% Black, 8% Hispanic, and 82% White non-Hispanic. Only 3% were in poverty. The median household income was $101,452.

20. The 2006 median value for owner occupied units in the Dallas Metro Division was $148,800. The median gross rent for renter occupied units in the area was $788 per month.

21. There were 20,000 occupied housing units in Flower Mound as of 2006. The median value for the owner occupied units was $238,000. The median rent for the renter occupied units was $1,645 per month.

**Exclusionary policies and practices**

22. The lack of affordable low income housing in Flower Mound is a direct result of the Town's racially exclusionary housing policies and practices.

23. The housing policies and practices causing the exclusion of affordable low income housing in Flower Mound include the Town's failure to implement any form of low income rental housing assistance program such as public housing, Section 8 housing, tax exempt bond and Low Income Housing Tax Credit financing for low income rental housing, and the Town's refusal to participate in the ICP program for local political subdivision loans or grants to encourage the development of Low Income Housing Tax Credit housing. The exclusionary housing policies and practices include the adoption of the current zoning ordinance, zoning map, Smart Growth ordinance and Smart Growth policies in so far as those elements of the Town's housing policies prevent, inhibit, or obstruct the creation of low income affordable rental multifamily housing.

**Federal funding for modern Flower Mound was based on planning and zoning that provided for apartments and other housing for low and moderate income families.**

24. The federal government provided $18,000,000 in guaranteed loans for the development of a New Town in Flower Mound during the 1970s. In addition, the federal government provided more than $1 million for the construction of water and sewer facilities to serve the Town of Flower Mound. The money was provided pursuant to the "Urban Growth and New Community Development Act of 1970," P. L. 91-609, 1970, 42 U.S.C. § 4510, *et seq.*[2] The law was passed to, among other purposes,

> . . . increase for all persons, particularly members of minority groups, the available choices of locations for living and working, thereby providing a more just economic social environment; . . . . 42 U.S.C. § 4511(f), subsequently repealed.

In order to receive federal funding, each local New Town had to make

> substantial provision for housing within the means of persons of low and moderate income and that such housing will constitute an appropriate portion of the community's housing supply. 42 U.S.C. § 4512(a)(7), subsequently repealed.

25. The New Town developer's goal for low and moderate income housing was dependent upon the use of federally subsidized housing programs.

26. The federal government took over the project after the private developers defaulted on the loans and subsequently sold the land for development. But before the default and the government takeover, the Town of Flower Mound and the New Town developer put policies into place that would have provided for between 17,400 and 18,516 total housing units in the Flower Mound New Town. Between 7,744 and 3,557 of these units would have been apartments. The New Town plan was to provide housing for between 3,237 and 3,702 low and moderate income

---

[2] 42 U.S.C. § 4511 to 4524 Repealed Pub. L. 98-181, Title IV, § 474(e), Nov. 30, 1983, 97 Stat. 1239.

occupied housing units. The Town of Flower Mound has replaced this plan with its exclusionary housing policies and practices.

**Creation of a segregated public school system**

27. The Town's exclusionary practices also keep the public schools serving the Town of Flower Mound predominantly White despite their location in the Lewisville Independent School District (LISD"), a school district with a substantial minority population. LISD has elementary schools with student body populations that range from 4.72% White to 91.2% White (2007-2008 data). LISD serves Lewisville, Flower Mound, The Colony, Highland Village, Copper Canyon, Double Oak, part of Carrollton, part of Frisco, and unincorporated parts of Denton County.

28. The schools in the Town of Flower Mound are maintained as predominantly White by attendance zones boundaries that keep students that live in Flower Mound in schools that serve only Flower Mound and three other predominantly White cities - Copper Canyon, Double Oak, and Highland Village. The three other cities - Copper Canyon, Double Oak, and Highland Village - prohibit multifamily housing through their zoning ordinances and have no affordable low income housing. There is only one elementary school located in Flower Mound that also serves Lewisville students. Marcus High School located in Flower Mound also serves a small number of Lewisville students from North Lewisville.

29. The LISD elementary, middle, and high schools serving Flower Mound have consistently scored higher than the LISD schools serving Lewisville on the State of Texas accountability ratings. The State ratings range in descending order from Exemplary, Recognized, Acceptable, and Unacceptable. As of the 2006 - 2007 ratings, the LISD Flower Mound elementary schools had scored "Exemplary" in 49% of the years for which ratings were available.

The LISD Lewisville elementary schools had scored "Exemplary" in 13% of the years for which ratings were available. The LISD Flower Mound Middle Schools had scored "Exemplary" in 64% of the years for which ratings were available and the LISD Flower Mound High Schools had scored "Exemplary" in 55% of the years for which ratings were available. The LISD Lewisville Middle Schools and High School had never scored "Exemplary" in any year for which ratings were available.

**Comparison to the City of Lewisville.**

30. The effect of the exclusionary housing policies and practices is shown by comparing Flower Mound's housing data and student demographics with those of Lewisville. The City of Lewisville, adjoining Flower Mound, did not implement the same exclusionary policies and practices during this period but rather allowed apartments, including Low Income Housing Tax Credit rental housing, to be built. As a result, Lewisville and the LISD schools located in Lewisville have become more minority and less White than the Flower Mound city and school populations during this period.

31. For the 1990 - 1991 school year, the LISD total student population was 87% White.

32. In 1990, apartments were 6.6% of the Flower Mound housing units. The student population of the LISD schools in Flower Mound was 94% White and Flower Mound was 92% White.

33. In 1990, apartments were 38% of Lewisville's housing units. The student population of the LISD schools in Lewisville was 83% White. Lewisville's total population was 84% White.

34. For the 1999-2000 school year, the LISD total student population was 78% White.

35. In 2000, apartments were 4.8% of Flower Mound's housing units. The student

population of the LISD schools in Flower Mound was 90% White and Flower Mound was 87% White.

36. In 2000 apartments were 41% of Lewisville's housing units. The student population of the LISD schools in Lewisville was 64% White and Lewisville's total population was 69% White.

37. For the 2006-2007 school year, the LISD total student population was 63% White.

38. In 2006, apartments were 4% of Flower Mound's housing units. The student population of the LISD schools in Flower Mound was 82% White and Flower Mound was 82% White.

39. In 2006, apartments were 51.5% of Lewisville's housing units. The student population of the LISD schools in Lewisville was 40% White and Lewisville's total population was 57.5% White.

40. The percent White of the LISD student population declined 21 percentage points from 1990 - 1991 to 2006 - 2007. However, the percent White of the LISD student population in schools located in Flower Mound declined only 12 points during the same period. Because of the apartments and affordable rental housing in Lewisville, the percent White of the LISD student population in schools located there declined 43 points from 1990 - 1991 to 2006 - 2007. During this same period, apartments declined from 6.6% to 4% of Flower Mound's housing units. During this same period, apartments increased from 38% to 51.5% of Lewisville's housing units.

41. Unlike Flower Mound, Lewisville has not followed policies and practices excluding multifamily housing. As a result, Lewisville has 74% of the apartments in LISD. The limitation of multifamily housing by Flower Mound excludes low income multifamily rental housing.

Flower Mound has none of the Low Income Housing Tax Credit units that are located in LISD. Lewisville has four of the five non-elderly Low Income Housing Tax Credit apartments that are located in LISD. The fifth is in the part of Carrollton that is in LISD. Flower Mound has only one of the 116 DHA Section 8 families living in LISD. 55% of the DHA Section 8 families in LISD are in Lewisville. 44% are in the part of Carrollton that is in LISD. One is in The Colony.

**ICP's request for the Town's participation in a program to attract Low Income Housing Tax Credit units to the Town.**

42. ICP requested the Town's participation in ICP's program to encourage the development of Low Income Housing Tax Credit units in the Town. ICP proposed that ICP would provide funds to the Town of Flower Mound to provide short term loans to Low Income Housing Tax Credit developers in connection with an approved application to develop multifamily rental housing under that program. Such funding would qualify an applicant for the points awarded by TDHCA under its Qualified Application Plan for support provided by a local political subdivision such as Flower Mound. For example, a $1,000,000 loan would probably allow a developer to obtain 18 competitive application points for a 200 unit Low Income Housing Tax Credit development. No Flower Mound funds would have been used. The loan or grant is expressly contingent on a successful applicant receipt of a housing tax credit allocation. If there is no award, then there is no loan or grant.

43. Under ICP's proposal, in return for receiving the funding from the program, the developer would set aside 25% of the units for DHA Section 8 Voucher participants referred to the development by ICP or DHA. This would have assisted ICP in its mission to create and obtain affordable housing for low income families in non-minority locations in the Dallas metro area such as Flower Mound by making units available for for ICP's clients. The Town would

have received the benefit of much needed affordable multi-family rental housing in a high opportunity community that offers little in the way of affordable rental housing for low income families compared to other parts of the Dallas metropolitan area.

44. Another option that was proposed by ICP was the similar program operated by the Southeast Texas Housing Finance Corporation ("SETH"). The regulations for the SETH program are available at http://www.sethfc.com/pdf/2008/LoansForTaxCreditApplicaion.pdf . The program would have required Flower Mound to designate SETH to make a loan as a local political subdivision. The loan would have been made using SETH funds, not Flower Mound funds. No Flower Mound funds would have been used. ICP would have provided a grant to developer to defray the costs of the loan in return for the developer's commitment to set aside units for ICP's clients and other DHA Section 8 voucher program participants.

45. The local political subdivision contribution programs have been successful at attracting developers of tax credit housing. For example, in the 2006 tax credit award cycle, four of the nine applications in the Dallas area region receiving tax credits had also received TDHCA selection criteria points for the local political subdivision contribution.[3] Although none of these grants was from ICP's program, the ICP program is designed to work similarly by providing the funds for the City's contribution to the tax credit developer.

46. The City of Frisco, Texas has entered into this type of local political subdivision grant agreement with ICP for the use of ICP financial assistance in the development of Low Income

---

[3] The authority for the local political subdivision grant or loan for housing tax credit projects is Tex. Gov't Code 2306.6710(b)(1)(E). The local political subdivision grant or loan program is at Section 49.9(i)(5) of the FY 2007 Qualified Allocation Plan and at Section 50.9(i)(5) of the TDHCA 2008 Qualified Allocation Plan.

Housing Tax Credit housing for ICP clients.

47. ICP also requested the Town to identify locations where the Town would support the development of Low Income Housing Tax Credit units or other affordable units. Given the scarcity of available multifamily zoned land in Flower Mound, the Town's willingness to endorse locations for affordable low income units would have been a first step in obtaining land and rezoning it for multifamily uses.

48. The Town was not willing to negotiate on either participation in the ICP program, participation in the similar program by the South East Texas HFC, or on acceptable locations in Flower Mound for low income affordable housing.

49. The development of low income rental housing in Flower Mound would reduce the segregative effect of the Town's policies. The subsidized rental housing units in the Dallas, TX metropolitan area are 33% Black and 16% Hispanic. American Housing Survey, Dallas, TX Metropolitan Area: 2002 Table 2-12. Housing for this 49% minority population would assist in the desegregation of Flower Mound which is 2% Black, 8% Hispanic, and 82% White Not-Hispanic or Latino.

**Discriminatory purpose**

50. The Town of Flower Mound's exclusionary housing policies and practices were initiated and are maintained with the purpose to discriminate against the likely residents of low income affordable rental housing because those residents will include a substantial number of persons who are Black. By purpose to discriminate is meant that the fact that a substantial number of those likely to be occupants of low income affordable rental housing would be Black is at least one substantial factor in the decisions to initiate and maintain the challenged policies

and practices. In addition, the fact that the residents of the areas in which the low income affordable housing would be located are predominantly White is at least one factor in the Town's decisions to initiate and maintain the challenged policies and practices.

**Injury to ICP**

51. The housing and school segregation caused by the exclusionary zoning injures ICP by preventing it from helping DHA Section 8 families find good housing in Flower Mound and in the attendance zones of the exemplary rated LISD schools found in Flower Mound. There is no housing in Flower Mound for ICP's clients and the other DHA Section 8 families except for a limited number of single family rental units.

52. The Town's refusal to participate in or negotiate for its participation in ICP's program to attract and encourage Low Income Housing Tax Credit units or in a similar program injures ICP by making the units that would have been produced and used by ICP's clients unavailable. By making the units unavailable, the Town's refusal makes it more difficult for ICP to fulfill its mission to create and obtain affordable housing for low income families in non-minority locations in the Dallas metro area such as Flower Mound.

53. The discriminatory housing policies and practices also injure ICP by preventing it from developing low income multifamily rental housing in Flower Mound. ICP has several programs for making low income multifamily rental housing available. It can lend or grant money to developers of such housing or it can develop the housing itself. ICP currently administers three such developments. But for any of ICP's programs to work, there must be vacant land available and zoned for multifamily housing. The Town's Executive Director of Development Services stated that less than 2 acres of high density residential zoned land was

available in Flower Mound. The Town's refusal to identify locations that it would support for use as low income affordable multifamily rental housing makes it more difficult for ICP to fulfill its mission to create and obtain affordable housing for low income families in non-minority locations in the Dallas metro area such as Flower Mound by making housing unavailable and perpetuating racial segregation in Flower Mound and the Dallas area.

**Claims for relief**

54. The Town of Flower Mound's exclusionary housing policies and practices that exclude affordable low income rental housing violate 42 U.S.C. § 3604 by making dwelling units unavailable because of race and color.

55. The Town of Flower Mound's refusal to negotiate with ICP concerning participation in ICP's local political subdivision loan or grant program and the Town's refusal to negotiate with ICP concerning identification of land to be used for low income rental housing violate 42 U.S.C. § 3604 because it is a refusal to negotiate based on the race and color of ICP's clients and the other DHA Section 8 voucher program participants who would occupy the dwelling units that would be made available by the proposed housing.

56. The Town of Flower Mound's refusal to participate in ICP's local political subdivision loan or grant program and the Town's refusal to identify of land to be used for low income rental housing violate 42 U.S.C. § 3604 because it makes dwellings unavailable because of the race and color of ICP's clients and the other DHA Section 8 voucher program participants who would occupy the dwelling units that would be made available by the proposed housing.

**Prayer for relief**

Plaintiff requests the following relief:

  A. a permanent injunction requiring the Town of Flower Mound end the exclusionary housing policies and practices,

  B. A permanent injunction requiring the Town of Flower Mound to take the actions within its power to eliminate the existing effects of its discriminatory housing policies and practices. Those actions include identifying specific sites for apartment use in ICP's local political subdivision loan or grant program for the development of Low Income Housing Tax Credit units and participation in that program or in an equivalent program.

  C. an award of attorney fees, litigation expenses including expert fees and expenses, and litigation costs, and

  D. any other appropriate relief.

            Respectfully Submitted,

            s/Michael M. Daniel
            Michael M. Daniel
            State Bar No. 05360500
            DANIEL & BESHARA, P.C.
            3301 Elm Street
            Dallas, Texas 75226-1637
            214-939-9230
            Fax 214-741-3596
            E-mail: daniel.michael@att.net
            Attorney for Plaintiff

            Laura B. Beshara
            State Bar No. 02261750
            DANIEL & BESHARA, P.C.
            3301 Elm Street
            Dallas, Texas 75226-1637
            214-939-9230
            Fax 214-741-3596
            E-mail: laurabeshara@swbell.net
            Attorney for Plaintiff