# United States District Court

EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| THE INCLUSIVE COMMUNITIES PROJECT, INC. | § § § | |
| v. | § § | Case No. 4:08-CV-433<br>Judge Schneider/Judge Mazzant |
| THE TOWN OF FLOWER MOUND, TEXAS | § § § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Pending before the Court is Defendant The Town of Flower Mound, Texas' Motion to Dismiss (Dkt. #8). Having considered the relevant pleadings, the Court is of the opinion that Defendant's motion should be denied.

## BACKGROUND

The Inclusive Communities Project, Inc. ("ICP") made offers of financial assistance to The Town of Flower Mound, Texas ("Town") in order to encourage the development of desegregated, affordable rental housing in Flower Mound. COMPLAINT AT 1-2. ICP offered to assist the Town with a program designed to attract Low Income Housing Tax Credit rental housing to Flower Mound. COMPLAINT AT 2. ICP alleges that the Town refused to negotiate for or participate in an ICP program, or any similar program, for the development of low-income housing. *Id*. There is no multifamily zoned vacant land available for purchase and use in Flower Mound. *Id*. ICP alleges that the Town practices exclusionary housing policies and practices, such as the adoption of current zoning ordinances, which obstruct the creation of low-income rental properties and create a segregated school system. *Id*. at 7-9.

ICP filed its complaint on November 19, 2008, alleging that the Town is in violation of the

Fair Housing Act ("FHA"), 43 U.S.C. § 3604, for perpetuating racial segregation by making dwellings unavailable because of race. *Id*. at 16. ICP seeks an injunction requiring the Town to end exclusionary housing practices and policies. *Id*. at 17. ICP also seeks an injunction requiring the Town to eliminate the effects of discriminatory housing policies and practices, including identifying specific sites for apartment use in ICP's program for the development of Low Income Housing Tax Credit units or in an equivalent program. *Id*. The Town filed a Motion to Dismiss on December 12, 2008. ICP filed a response on January 2, 2009. The Town filed a reply on January 13, 2009. ICP filed a sur-reply on January 20, 2009.

**ANALYSIS**

The Town argues that ICP's claims should be dismissed under Federal Rule of Civil Procedure 12(b)(1) because ICP lacks standing, ICP's claims are barred by the applicable statute of limitations, and ICP's claims are not ripe. The Town also argues that ICP's claims should be dismissed under Federal Rule of Civil Procedure 12(b)(6) because ICP has not stated a claim upon which relief can be granted.

*Standing*

The Town argues that the Court does not have subject matter jurisdiction over ICP's claims because ICP lacks standing. *See Raines v. Byrd*, 521 U.S. 811, 818 (1997) (federal courts have jurisdiction only if the case or controversy requirement of standing is met). The FHA makes it unlawful to "refuse to sell or rent...or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(a). Standing under the FHA extends to the full limits of Article III of the Constitution, and is not restricted by any of the doctrines of prudential standing. *Havens Realty Corp. v. Coleman*, 455 U.S.

2

363, 372 (1982). Thus, a party has standing to file suit if it can demonstrate (1) an "injury in fact" (i.e., harm that is concrete and actual or imminent, not merely conjectural or hypothetical); (2) causation (i.e., a fairly traceable connection between the plaintiff's injury and the defendant's alleged conduct); and (3) redressability (i.e., likelihood that the requested relief will remedy the alleged injury). *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102-03 (1998); *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Initially, the plaintiff may meet its burden of establishing standing by alleging in its complaint the nature of its injury resulting from the defendant's conduct.[1] *Lujan*, 504 U.S. at 561. However, whether on motion for summary judgment or at trial, the plaintiff ultimately will have to set forth specific facts necessary to support the claim. *Id.*

*Injury in Fact*

The Town alleges that ICP's injury is hypothetical and based on a series of future events that may not occur, rather than on a concrete harm, which does not amount to an "injury in fact." The Town alleges that ICP's claims are an attempt to assert the injuries of others and must be dismissed for lack of standing. ICP argues that the Town's refusal to participate in ICP's housing program directly injures ICP by denying it one way to use its funds to assist in the development of housing units for its clients. ICP only asserts standing on its own behalf as an organization and not on behalf of its clients.

Under the FHA, "the Supreme Court held that an organization has suffered injury in fact if the defendant's actions impaired the organization's ability to provide counseling and referral services." *La. ACORN Fair Housing v. LeBlanc*, 211 F.3d 298, 304 (5th Cir. 2000) (citing *Havens*, 455 U.S. at 379). "Such concrete and demonstrable injury to the organization's activities, with the

---

[1] The Court will consider the motion to dismiss based solely on ICP's complaint.

3

consequent drain on the organization's resources, constitutes far more than simply a setback to the organization's abstract social interests." *Id*. "The mere fact that an organization redirects some of its resources to litigation and legal counseling in response to actions or inactions of another party is insufficient to impart standing upon the organization." *Assoc. for Retarded Citizens of Dallas v. Dallas County Mental Health & Mental Retardation Ctr. Bd. Of Trustees*, 19 F.3d 241, 244 (5th Cir. 1994). "An organization can have standing if it proves a drain on its resources resulting from counteracting the effects of the defendant's actions." *La. ACORN*, 211 F.3d at 305. "The Supreme Court in *Havens* noted that an organization must *demonstrate at trial* that it suffered some sort of impairment in facilitating open housing before receiving judicial relief." *Id*.

"At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Meadowbriar Home for Children, Inc.*, 81 F.3d 521, 529 (5th Cir. 1996) (citing *Lujan*, 504 U.S. at 561). "[W]hen the plaintiff is himself an object of the action (or foregone action) at issue...there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it." *Id*. On a motion to dismiss for lack of standing, "general factual allegations of injury resulting from the defendant's conduct may suffice because the court presumes that general allegations embrace those specific facts that are necessary to support the claim." *Bennet v. Spear*, 520 U.S. 154, 168 (1997) (quoting *Lujan*, 504 U.S. at 561).

At this pleading stage, ICP's complaint sufficiently alleges a redressable injury in fact that is causally connected to the alleged conduct of the Town. ICP alleges there is no housing available for ICP's clients except for a limited number of single family rental units. COMP. AT 15. Because

4

the Town refuses to negotiate or participate in ICP's program, or a similar program, ICP's clients are barred from finding Section 8 housing in Flower Mound. *Id.* ICP argues that the Town's zoning and housing policies maintain racial segregation of Flower Mound, which violates the FHA. *Id.* The Court considers ICP's allegations to support an injury in fact because, if taken as true, the facts alleged show that the Town's non-participation in ICP's program or a similar program impairs ICP's ability to provide housing in Flower Mound for its clients.

ICP's allegations are similar to those in *Havens Realty*. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982). Like the *Havens Realty* organization, ICP alleges that the conduct of the Defendant has a segregative effect that frustrates its mission of promoting equal housing opportunities and requires it to spend more time and money in performing its activities than it otherwise would. ICP pleads specific facts that support its claim: no apartment complexes in Flower Mound accept the vouchers given to ICP's Section 8 clients, making it difficult for ICP to place its clients in low-income housing units in Flower Mound. *See* COMP. AT 5. ICP's pleaded injuries are more concrete allegations than a mere intangible setback to ICP's general interest in desegregation of Flower Mound. Therefore, ICP has established an injury in fact at the pleadings stage.

Also, the Town argues that ICP's alleged injury is insufficient to establish standing because it is indirect. The Town alleges that ICP's injury is indirect in that the Town's alleged discrimination is not directed at ICP, but against racial minorities, such as ICP's clients. Congress has abrogated the prudential standing rules in FHA cases, so ICP "may have standing to seek relief on the basis of the legal rights and interests of others." *Warth v. Seldin*, 422 U.S. 490, 501 (1975); *see also Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 103 n. 9 (1979) (under the FHA, "as long as the plaintiff suffers actual injury as a result of the defendant's conduct, he is permitted to prove that

5

the rights of another were infringed"); *Havens Realty*, 455 U.S. at 375-78 (holding individual plaintiffs had standing under FHA based on alleged indirect injury of being deprived of living in an integrated community due to defendant's racial steering of other persons). "The distinction" between third-party and first-party standing is of "little significance" under the FHA. *Havens Realty*, 455 U.S. at 375.

*Causation*

In order to satisfy the causation element of standing, ICP must establish that its alleged injury is fairly traceable to the Town's actions. The injury must not be the result of the independent action of some third party not before the court. *Lujan*, 504 U.S. at 560. ICP alleges that the Town is not willing to consider low-income housing developments in Flower Mound, which causes a scarcity of available units and makes it more difficult for ICP to secure housing for its clients. ICP argues that the Town's zoning plan limits the number of apartments to only 4% of all housing units in Flower Mound. *See* COMP. AT 6. The population that uses apartments in the Dallas area is disproportionately non-white, compared to the population that uses single family dwelling units. *Id*. Therefore, the Town's limitation on the number of apartments, makes unavailable units of a type of housing that is disproportionately used by non-white households, which make up ICP's client base. *Id*.

Taking ICP's allegations as true, the Court can make a reasonable inference that, absent the Town's choice to limit the number of apartment units through zoning and housing practices, there is a substantial probability that more low-income housing units would be available in Flower Mound, making it easier for ICP to secure housing for its clients. *Cf. Warth*, 422 U.S. at 504. ("Petitioners must allege facts from which it reasonably could be inferred that, absent the respondents' restrictive

zoning practices, there is a substantial probability that they would have been able to purchase or lease in Penfield"). "Because no facts alleged...suggest race-neutral reasons" why the Town would not support the construction of multi-family dwellings, "it is fair and not merely speculative to trace this imbalance to the alleged consideration of race." *See Inclusive Comm. Project, Inc. v. Tex. Dept. of Housing and Comm. Affairs*, 2008 WL 5191935 *5 (N.D. Tex. Dec. 11, 2008) (holding it was fair to trace disproportionate denial of tax credits for proposed developments in Caucasian neighborhoods to an alleged consideration of race). Although participation and negotiation by the Town may not guarantee that low-income housing will be developed in Flower Mound, the Court may reasonably infer that participation, or at least negotiation, by the Town in ICP's programs, or similar programs, would over time increase the number of low-income housing units available. Therefore, ICP has sufficiently alleged the causation element of standing.

*Redressability*

Also, ICP must establish that it is likely, and not merely speculative, that its injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 561. ICP requests relief in the form of an injunction requiring the Town to either participate in ICP's program or provide an equivalent program that makes units available in Flower Mound for ICP's clients. Such broad relief would redress ICP's alleged injuries. Therefore, ICP has established the redressability element of standing.

***Ripeness***

Having determined that ICP has standing under the FHA, the Court now considers the Town's argument that ICP's case is not ripe for review by the Court. "A court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical." *Groome Resources LTD, LLC v. Parish of Jefferson*, 234 F.3d 192, 199 (5th Cir. 2000) (citing *New Orleans Pub. Serv., Inc. v.*

*Council of New Orleans*, 833 F.2d 583, 586-87 (5th Cir. 1987) (citations omitted)). "The key considerations are 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id*. "A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required." *Id*.

ICP's claim under the FHA is an alleged violation of 42 U.S.C. § 3604(a). This section makes it unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, *or otherwise make unavailable or deny*, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(a) (2006) (emphasis added). ICP contends that the Town's refusal to negotiate with ICP, or to participate in low-income housing programs, has the discriminatory effect of making dwellings in Flower Mound unavailable to ICP's clients and maintains racial segregation in Flower Mound neighborhoods and schools.

ICP's claim under § 3604(a) is ripe for adjudication. The actions challenged are not speculative; rather, ICP challenges actions that the Town has already taken. ICP sent a letter to the Town on April 22, 2008, explaining ICP's programs and requesting the Town's participation. PLAINTIFF'S RESPONSE AT 9. The Town responded to ICP's letter on May 14, 2008, met with ICP on June 2, 2008, and received a June 5, 2008 letter from ICP to confirm that the Town was not interested in ICP's programs. *Id*. at 10. The Town did not reply to ICP's follow-up letter. *Id*. While never formally denying ICP's request, the Town's indeterminate delay in responding to ICP's letter has the same effect as declining to negotiate or participate. *See Groome*, 234 F.3d at 200 ("This denial can be actual or constructive, as an indeterminate delay has the same effect as an outright denial"). At this time, there is no evidence that the Town has revisited ICP's request, or intends to

8

do so, as ICP sent its final request to Town in June of 2008. It is reasonable for the Court to conclude that the Town has no intention of negotiating for, or participating in, ICP's low-income housing programs or similar programs, because there is no evidence that the Town has responded to ICP approximately nine months since ICP first made its requests. The alleged conduct that is the basis for ICP's claim has already occurred. Therefore, "the remaining issues are purely legal ones," and are ripe for review. *Id*. at 199.

Regarding the hardship to the parties if court consideration is withheld, "[n]umerous courts have stressed that housing discrimination causes a uniquely immediate injury." *Id*. (citation omitted). According to ICP, further delay in obtaining judicial resolution of this issue will allow the Town to continue the alleged discriminatory housing and zoning practices. ICP alleges that participation by local political subdivisions creates a "selection priority" on tax credit applications to build low-income housing developments. COMPLAINT AT 12-14. The Town's refusal to participate or negotiate with ICP makes it less likely that an application for tax credits will be approved, leading to a lack of available housing for ICP's clients in Flower Mound. *Id*. Therefore, ICP has shown a hardship, and the issue is ripe for review.

*Statute of Limitations*

The Town argues that ICP's claims are barred by the statute of limitations. The parties agree that a plaintiff must file a lawsuit within two years of the end of an alleged discriminatory housing practice. 42 U.S.C. § 3613 (a)(1)(A). The Town alleges that ICP bases its claim on events and occurrences that pre-date the statute of limitations period. ICP argues that its claims are not time barred because ICP first requested the Town's participation in ICP programs in April of 2008 and ultimately ICP filed its complaint in November of 2008, well within the two-year statute of

limitations period. ICP also argues that the Town's limitations argument is not properly raised in a Rule 12 dismissal motion.

The Court declines to determine whether a statute of limitations argument is appropriate under a Rule 12 motion. Accepting as true all the well-pleaded facts, and viewing them in the light most favorable to ICP, the Court is of the opinion that ICP's claims are not time barred. ICP bases its claims on the Town's choice not to participate in ICP's low-income housing programs or similar programs. ICP first contacted the Town in April of 2008 regarding low-income housing opportunities in Flower Mound. Even if ICP's claims were to accrue on this date, ICP's claims would not be time barred. Therefore, the Court finds that ICP's claims are not barred my the statute of limitations.

***Failure to State a Claim Upon Which Relief Can Be Granted***

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a party may move for dismissal of an action for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). The Court must accept as true all well-pleaded facts contained in the plaintiff's complaint and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In addition, all reasonable inferences are to be drawn in favor of the plaintiff's claims. *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). However, dismissal for failure to state a claim does not require the appearance that, beyond a doubt, the plaintiff can prove no set of facts in support of its claim that would entitle it to relief. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1968 (2007). Rather, to survive a 12(b)(6) motion to dismiss, a plaintiff must show, after adequately stating its claim, that the claim "may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 1969.

ICP alleges that the Town violated the FHA under the "otherwise make unavailable" clause

of 42 U.S.C. § 3604(a), because the Town considered race in deciding not to locate low-income housing units Flower Mound. By its terms, the FHA prohibits discrimination in housing "because of race." Allegations of discriminatory housing and zoning practices have been held to be valid claims under the "otherwise make unavailable clause of the FHA." For example, the FHA was held to cover a segregated housing pattern that was caused or exacerbated by a city's practice of racial discrimination in its decisions on the location of subsidized housing. *See U.S. v. Yonkers Bd. of Educ.*, 837 F.2d 1181 (2nd Cir. 1987). Also, a zoning ordinance that restricted private construction of multifamily housing to a largely minority urban area was held to violate the FHA because the ordinance impeded racial integration by restricting low-income housing needed by minorities to an area already more than fifty-percent minority. *See Huntington Branch, N.A.A.C.P. v. Town of Huntington*, 844 F.2d 926 (2nd Cir. 1988).

Accepting as true all the well-pleaded facts contained in ICP's complaint, and viewing them in the light most favorable to ICP, the Court is of the opinion that ICP's claims may be supported by some set of facts consistent with the allegations stated in the complaint. Absent a claim which is obviously insufficient, the Court should not grant a Rule 12(b)(6) motion to dismiss, thereby denying ICP an opportunity to develop facts to support its complaint. Moreover, sufficient procedures are available to a defendant to seek summary disposition of a lawsuit after a plaintiff has been afforded some opportunity to develop facts to support his complaint. *See Reeves v. City of Jackson*, 532 F.2d 491, 494 (5th Cir. 1976). A review of the Town's motion and the complaint demonstrates that the Town has not met its burden with respect to a Rule 12(b)(6) motion. The proper avenue to address this claim is under Fed. R. Civ. P. 56. Accordingly, the Town's motion to dismiss should be denied.

**RECOMMENDATION**

Based upon the findings and legal analysis discussed above, the Court RECOMMENDS that Defendant's motion to dismiss be DENIED.

Within ten (10) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 15th day of July, 2009.**

_____
AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE