IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| Inclusive Communities | § | |
| | § | Civil Action No. 4:08cv00433 |
| v. | § | |
| | § | |
| The Town of Flower Mound TX | § | |
| | § | |

INCLUSIVE COMMUNITIES' SUR-REPLY BRIEF OPPOSING
TOWN'S MOTION FOR SUMMARY JUDGMENT

**Table of contents**

None of the Town's three attempts to meet the summary judgment burden
to demonstrate the absence of a genuine issue of disputed fact succeed . . . . . . . . . . . . . . . . . . . 1

Plaintiff does dispute that the disparate impact proof standard set out in
the authorities cited on pages 7 and 8 of Defendant's Motion applies to this case . . . . . . . . . . . 3

Inclusive Communities' case is that the Town's actions were purposefully
discriminatory and not that the Town violated some constitutional or
statutory duty to provide low income housing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

The claim that a general policy - which does not exist -  is the reason
for what is actually a litigation defense tailored for use in a specific case
is one of several pretexts cited by Inclusive Communities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

The facts and opinions in the Inclusive Communities' expert reports are
reliable as shown by the text of the reports and are relevant to assisting
the Court to understand the evidence and determine several fact issues . . . . . . . . . . . . . . . . . . 6

The Town's other evidence objections are not sustainable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Inclusive Communities has designated facts - using proper summary
judgment evidence - that prove that standing and discriminatory purpose
are disputed issues of fact . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Signature . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Certificate of service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**None of the Town's three attempts to meet the summary judgment burden to demonstrate the absence of a genuine issue of disputed fact succeed.**

Nowhere does the Inclusive Communities assert that the Town has the summary judgment burden to prove that the Town did not discriminate. Inclusive Communities' argument is that the Town has not met its summary judgment burden of proof to identify the portions of the record that demonstrate the absence of a genuine issue of disputed fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 328 (1986). The Town's motion attempts to meet the Town's burden in three ways. Each way fails.

First, the Town includes declarations from its officials and employees that contain denials that the Town has discriminated. Defendant Town of Flower Mound's Motion for Summary Judgment page 3. Whether such general statements would carry the Town's burden in the absence of a response providing proper summary judgment evidence on the issue of discrimination is not the issue. Inclusive Communities produced proper summary judgment evidence on the elements of its claims of purposeful racial discrimination. Inclusive Communities produced the prima facie case evidence of the disparate effects of the Town's actions on a racial minority group - Blacks. Inclusive Communities Opposition To Motion for Summary Judgment, pages 10 - 13. Inclusive Communities produced the prima facie evidence of the discriminatory effects of the Town's actions in perpetuating racial segregation in the Town. Opposition pages 10, 13. *Jim Sowell Construction Co. v. City of Coppell*, 61 F.Supp.2d 542, 547 (N.D. Tex. 1999). Inclusive Communities produced proper summary judgment evidence that the Town's statement of non-discriminatory reasons for its actions were pretextual and not worthy of credence. Opposition pages 21 - 25. Inclusive Communities produced evidence of other factors relevant to a circumstantial evidence showing of discriminatory purpose. Opposition pages 13 -

21.

Second, the Town asserts that the Inclusive Communities has no direct evidence of discrimination since the Town's employees and officials deny that its policies and regulations contain any racial terms. Motion Exhibits B through E. Inclusive Communities agreed that there is no direct evidence of discrimination such as explicit racial terms in the Town's regulations. Inclusive Communities then cited the authority that direct evidence is not required in order to prove racial discrimination under the 14th Amendment or the Fair Housing Act. Opposition page 4 citing *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266 - 268 (1977). The circumstantial evidence framework set out in *Village of Arlington Heights* for proving racial discrimination has been adopted for a wide range of subjects and is not restricted to deciding matters involving the denial of specific zoning requests. *Reno v. Bossier Parish School Bd.*,  520 U.S. 471, 489 (1997) applied the *Arlington Heights* circumstantial evidence framework to proving discriminatory purpose under 42 U.S.C. § 1973(c), Section 5 of the Voting Rights Act. *Columbus Bd. of Ed. v. Penick*,  443 U.S. 449, 465 (1979) applied *Arlington Heights* to school desegregation. *C.f. Personnel Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 273-274 (1979) (gender discrimination); *Castaneda v. Partida*, 430 U.S. 482, 493-494, 495 n. 13 (1977) (discrimination in grand jury selection). The *Arlington Heights* circumstantial evidence framework is applicable to Inclusive Communities' circumstantial evidence on the issue of racially discriminatory purpose. Order, Doc. No. 48, entered 2/17/2010, pages 4 - 6.

Third, the Town made repeated conclusory statements that Inclusive Communities has no evidence on various issues. These statements do not meet the Town's "no evidence" summary judgment burden to point to the specific evidence that would demonstrate Inclusive Communities

-2-

cannot show the absence of disputed material facts. *Thomas v. Abbott*, 2009 WL 900740, 1 - 2 (E.D.Tex. 2009). The movant's conclusory statement that there is no evidence to support the claims is not enough to shift the burden to produce evidence in opposition to the motion. The movant must point to specific portions of the record to demonstrate the inability of the non-movant to produce evidence to show the presence of disputed issues of fact. *Ashe v. Corley*, 992 F.2d 540, 543 (5th Cir. 1993); *Russ v. International Paper Co.*, 943 F.2d 589, 591 - 592 (5th Cir. 1991). The Town's motion does not satisfy this burden. However, the Inclusive Communities' response does produce the prima facie case evidence, Opposition pages 10 - 13, the pretext evidence, Opposition pages 21 - 25, and the other circumstantial evidence, Opposition pages 13 - 21, to show that the question of discriminatory purpose is a disputed issue of fact. *Jim Sowell Construction Co.*, 61 F.Supp.2d at 546, 552.

**Plaintiff does dispute that the disparate impact proof standard set out in the authorities cited on pages 7 and 8 of Defendant's Motion applies to this case.**

The Town's assertion that the applicable burden of proof and response is that of a disparate impact case is incorrect. Inclusive Communities has pleaded and is presenting a discriminatory purpose case under 42 U.S.C. § 3604. The *Arlington Heights* circumstantial evidence is an integral part of the proof of purposeful racial discrimination when there is no direct evidence of such discrimination. *Miller v. City of Dallas*, 2002 WL 230834, *3 (N.D. Tex. 2002). Discriminatory effects are also used as part of the circumstantial evidence to show discriminatory purpose. *Jim Sowell Construction Co.*, 61 F.Supp.2d at 547. Inclusive Communities' evidence presents the discriminatory effects evidence as part of its purpose case. The circumstantial evidence for racial purpose can also include facts which point to pretext. *Reeves v. Sanderson Plumbing*, 530 U.S. 133, 147 (2000).

**Inclusive Communities' case is that the Town's actions were purposefully discriminatory and not that the Town violated some constitutional or statutory duty to provide low income housing.**

Inclusive Communities' response provides the circumstantial evidence to show that the issue of whether the Town's actions were motivated by discriminatory purpose is a disputed material fact. Inclusive Communities' case does not depend on the existence of a separate constitutional or statutory duty to provide low-income housing. There was no such separate constitutional or statutory duty in the case of *U.S. v. City of Parma*, 661 F.2d 562, 575 (6th Cir. 1981), *cert. denied*, 456 U.S. 926 (1982). Yet the City of Parma's successive decisions resulting in the exclusion of various types of low income affordable housing violated the Fair Housing Act. *Id.* at 574 - 575. The issue is whether the Town's race neutral decisions and exclusionary housing practices are purposefully discriminatory not whether those decisions and practices violated some other constitutional or statutory provision.

Inclusive Communities cites the Community Development Block Grant rules for the proposition that the Town in return for the federal funds it receives under that program would have been expected to participate in the proposed program. Opposition page 18. But Inclusive Communities made it clear that it was not seeking to enforce those rules. Opposition page 19 n. 7.

Inclusive Communities has made no request that the Town of Flower Mound itself construct affordable housing under either the Inclusive Communities' program or any other program. The Inclusive Communities' request was two fold and each part of the request was for the purpose of removing obstacles to the development of affordable housing by other entities using no Town resources. Inclusive Communities asked the City to accept $2,000,000 from Inclusive Communities for loans to developers using Low Income Housing Tax Credits and other

non-Town resources to develop affordable low income housing. Inclusive Communities asked the Town to identify specific locations in the Town which the Town would support for location of affordable low income housing. Town App 26 - 27. Both requests were to eliminate obstacles to the third party development of low income housing by providing the means to obtain the tax credits and the zoning necessary for that housing. Neither request involved the Town constructing affordable housing.

The request for the Town to identify sites the Town would support for rezoning to accommodate low income affordable rental housing was necessary because the Town has eliminated the procedural option of seeking rezoning to a residential density and use that will support low income housing. Because there is no land designated for such a use in the Town Master Plan, there cannot be any rezoning to such a use. Inclusive Communities' Opposition to Motion for Summary Judgment, pages 9 - 10; Att 156, 1/14/08 P&Z; Att 160, 2/18/08 Town Council; Att 164, 4/9/07 P&Z; Att 183 - 184, 186 - 197, 201, Joyner report and Town documents referred to at those  pages. The Town's index of Master Plan Amendments from 2006 to date does not show that any request for a Master Plan Amendment involving a change from a lower to a higher High Density Residential Use has been approved. Att 209 - 210, Master Plan Amendments, see entries for MPA 10-07, MPA 12-07, MPA 16-07, MPA 04-09.

ICP also alleges that the Town's purpose in using the zoning and land use regulations to make multifamily housing unavailable is because of the race and ethnicity of persons likely to reside in multifamily rental housing and the race and ethnicity of the majority of the persons already residing in the Town. Complaint ¶¶ 16, 17, 23, 53, 54; Att 66 Julian deposition. But this is not an allegation that the Town has the affirmative duty to construct affordable housing. It is an

allegation that the Town cannot use its zoning and land use regulations to exclude low income programs from the Town in order to purposefully discriminate on the grounds of race or ethnicity. The remedy for this violation - as for the other violations alleged - does not require the Town to construct affordable housing. Complaint ¶ Prayer for Relief.

**The claim that a general policy - which does not exist - is the reason for what is actually a litigation defense tailored for use in a specific case is one of several pretexts cited by Inclusive Communities.**

ICP asked for the Town's consent that would have allowed ICP to operate the State of Texas Neighborhood Stabilization Program at the state and ICP's expense. But the Town refused its consent claiming that it was acting pursuant to a Town policy that prohibited

> negotiating with persons or firms who are bringing suit against it on matters that are the subject of the lawsuit, apart from settlement discussions, if any, unless and until such cases are dismissed. Att 245, Lott & Voss NSP.

The statement was false. The Town has no such policy. When pressed, the Town admitted that the decision was not based on a policy but on advice from the Town's attorney that was crafted for this specific case. Att 609 - 610, Town response to RFP: 611 - 613. This is an instance of pretext - a false or unbelievable claim that race-neutral and legitimate reasons are the explanation for an effect that could also have been caused by taking race into account also supports a finding of racial purpose. *Reeves v. Sanderson Plumbing*, 530 U.S. 133, 147 (2000).

Inclusive Communities also presented other evidence of pretext in other contexts that the Town's reply did not mention. Opposition pages 21 - 25.

**The facts and opinions in the Inclusive Communities' expert reports are reliable as shown by the text of the reports and are relevant to assisting the Court to understand the evidence and determine several fact issues.**

The Town's reply brief states a general objection to Inclusive Communities' expert

reports based on an unexplained lack of reliability and relevance. The relevance objection is

based on the Town's assertion that the experts do not express an opinion on the ultimate issue to

be decided by the trier of fact - discriminatory purpose - but rather focus on subsidiary facts that

are part of the purpose finding.

Lyke Thompson's testimony as based on his report, would be directly relevant to the

prima facie case - whether the Town's actions perpetuate racial segregation. Professor Thompson

uses a simple but powerful and accepted method of determining what the Town's racial

composition would be absent its actions excluding all forms of low income publicly assisted

housing. Thompson finds that if the Town merely had its pro-rata share of the region's low

income assisted housing there would be 791 Black occupied units or 4.9% of the Town's

occupied units instead of the 485 Black occupied units that were 2.97% of the Town's occupied

units. This disparity was not the product of chance. Att 251 - 253, Thompson report. This

segregative effect is directly relevant to the prima facie case. *Jim Sowell Construction Co.*, 61

F.Supp.2d at 547.

One of the Town's experts admits that the Thompson conclusion is corroborated by

common sense. Town Att page 467. Another expert has one line of criticism on the Thompson

Report suggesting that it does not factor in location and price. Town Att page 435. This expert

has no statistical background. Town Att pages 447 - 452. The Town's third expert is silent on the

Thompson Report. The Town has not presented a basis for a finding of unreliability.

Jill Khadduri's testimony, as based on her report, would be directly relevant to the

Court's understanding of two of the government housing programs at issue in the case. Dr.

Khadduri explains the Low Income Housing Tax Credit program, the Section 8 Housing Choice

Voucher program, and the manner in which both programs can be used to provide desegregated housing opportunities for minority households in places like Flower Mound. Att 118 - 123, Khadduri report. This is directly relevant by showing that the program proposed by Inclusive Communities would serve minority households and provide them with desegregated housing opportunities. One Town expert declines to comment on the Khadduri report. Town Att page 466. Another Town expert notes that she provides an overview rather than accounting for land prices in Flower Mound. Town Att page 434. Neither establishes unreliability.

Allan Parnell's testimony, as based on his report, would be that the maps, tables, and charts showing an association between the existence of a racially diverse population and the presence of multifamily and low income housing are correct. Att 301 - 305, 313 - 314, Parnell report. The Parnell maps also support the finding that the Town's exclusion of affordable housing will also maintain racial segregation in the Lewisville School District. Att 305 - 313, Parnell report. Such associations are relevant to both the prima facie case and the ultimate finding of discriminatory purpose. If the exclusion of low income and multifamily housing was not associated with racial segregation in housing and school patterns, there would be no discriminatory effects. Nor would maintaining racial segregation in housing and school patterns be a realistic motive to assert for the Town's actions. *Artisan/American Corp. v. City of Alvin*, 588 F.3d 291, 294, 298 n. 17, 299 n. 20 (5th Cir. 2009). None of the Town's experts assert that the maps, charts, and tables are inaccurate, wrong, or unreliable. Town Att pages 370 - 496.

Ann Joyner's testimony, as based on her report, would be that there is no land available and zoned for new multifamily uses in the Town, that the Master Plan does not provide for any such uses, and that this is inconsistent with the Smart Growth principles the Town claims it is

following. Att 178 183 - 184, 186 - 197, 201. No one disagrees with her observations. These observations are directly relevant to Inclusive Communities' allegations. The absence of land available for or designated for multifamily uses is the reason for the request that the Town identify sites it would support for low income affordable housing. The inconsistency of the lack of multifamily zoned land and affordable low income housing with the Smart Growth principles the Town claims guide its land use policies is circumstantial evidence of discriminatory purpose. Inclusive Communities' Opposition, page 20. One Town expert asserts that the lack of land zoned for multifamily is a common problem for developers and that the explanation may not be discrimination but the lack of demand for multifamily housing. Town Att pages 439 - 444. Another expert finds that she has no smoking gun and disagrees with her conclusions about the cause of the observed lack of multifamily housing and compliance with Smart Growth principles. Town Att 471, 468 - 472.

Inclusive Communities did not ask experts to express an opinion on the ultimate issue in the case. The ultimate issue is whether the Town has acted with discriminatory purpose. Inclusive Communities' evidence on the ultimate issue is set out using the *Arlington Heights* circumstantial evidence framework. Opposition pages 10 - 21.  The experts' testimony is being provided on individual elements of those factors to assist the Court in understanding the evidence and to determine various facts in issue. All of the evidence on the *Arlington Heights* factors is relevant to the ultimate issue of racially discriminatory purpose.

The disagreements expressed by the Town's experts with Inclusive Communities' experts do not establish unreliability, only differences of opinion. The Fed. R. Evid. 702 standard is satisfied.

> When a trial court, applying this amendment, rules that an expert's testimony is reliable, this does not necessarily mean that contradictory expert testimony is unreliable. Fed. R. Evid. § 702 Advisory Committee Notes, 2000 Amendment.

**The Town's other evidence objections are not sustainable.**

The two year statute of limitation does not set the standard for relevance in this case. Order, Doc. No. 48, pages 3 - 4. Relevant evidence is not limited by whether it involved the Town's dealings with Inclusive Communities. *Id*, pages 4 - 6. Tab 44, the City of Frisco Grant Agreement, is offered to show that it exists, not for the truth of any facts stated in it.

The declarations of McCain Tab 9, Scott Tab 35, Daume Tab 57, Winner Tab 58 state facts within the knowledge of the declarant and are proper summary judgment evidence. Fed. R. Civ. P. 56(e)(1). The tables that are the subject of those declarations, Tabs 59 - 61, are based on business records and other records of regularly conducted activities of the course of Inclusive Communities' operations and are summaries of the information in those records. Fed. R. Evid. §§ 803(6), 1006. These declarations and the related tables are proper summary judgment evidence on the issue of standing. The non-cited pages of Tab 2 are uncited parts of a deposition included for background purposes.

**Inclusive Communities has designated facts - using proper summary judgment evidence - that prove that standing and discriminatory purpose are disputed issues of fact.**

Inclusive Communities' response set out specific facts supported by proper summary judgment evidence on the issues of standing and discriminatory purpose that contradicted both the facts asserted and the "no evidence" allegations in the Town's Motion. Opposition pages 10 - 25. Inclusive Communities' response is entitled to the credence and inferences in its favor that are part of the summary judgment principles. *Reeves*, 530 U.S. at 152; *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 338 (5th Cir. 2005). The Town's motion should be denied.

-10-

Respectfully Submitted,

s/Michael M. Daniel
Michael M. Daniel
State Bar No. 05360500
DANIEL & BESHARA, P.C.
3301 Elm Street
Dallas, Texas 75226-1637
214-939-9230
Fax 214-741-3596
E-mail: daniel.michael@att.net
Attorney for Plaintiff

s/Laura B. Beshara
Laura B. Beshara
State Bar No. 02261750
DANIEL & BESHARA, P.C.
3301 Elm Street
Dallas, Texas 75226-1637
214-939-9230
Fax 214-741-3596
E-mail: laurabeshara@swbell.net
Attorney for Plaintiff


Certificate of service

I certify that on March 15, 2010 I electronically filed this document with the Clerk of the U.S. District Court for the Eastern District of Texas using the electronic case filing system. This was also the method of service of this document upon counsel for the defendant in this case.

s/ Michael M. Daniel
Michael M. Daniel